# Houston v. Cook, Appellant.

*Sale—Warranty—Misrepresentations—Quality.*

A vendor of goods is not answerable for their quality unless he has expressly warranted them, or has been guilty of fraudulent representations or affirmation of a quality known to be false.

In an action on a promissory note given in payment for a raft of lumber, where the defendant claims that the plaintiff made misrepresentations as to quality, it is not improper to charge that " the representations must have been false and fraudulent; and if the plaintiff knew that his timber was rotten, he was guilty of a fraudulent misrepresentation. But if the plaintiff in getting it out of the woods found it reasonably sound to appearance and did not know, had no means of knowing it was unsound, then his representation that it was sound would amount to nothing."

Argued Oct. 26, 1892. Appeals, Nos. 12 and 13, Oct. T., 1892, by defendant, J. W. Cook, from judgments of C. P. No. 1, Allegheny Co., June T., 1885, Nos. 148 and 353, on verdict for plaintiff, J. R. Houston. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on promissory notes.

The facts appear by the opinion of the Supreme Court.

The court below charged in part as follows, by COLLIER, J.:

["Now, gentlemen, you must not be under a misapprehension as to the law in that particular, and I will read the rule from a decision of our Supreme Court. It is this: 'A vendor of goods is not answerable for their quality unless he has expressly warranted them, or has been guilty of fraudulent representation or affirmation of a quality known to be false.' In other words, representations about the quality or the condition of goods, even though false, will not enable the person to take the goods, keep them, and not pay for them, or to set up a defence against paying for them.] [5] . . . .

["Now, gentlemen, on the question of fraudulent misrepresentations: The representations must have been false and fraudulent, and if, as alleged by the learned counsel for the defendant, the plaintiff knew this timber was rotten, he was guilty of a fraudulent misrepresentation. But if the plaintiff in getting it out in the woods found it reasonably sound to appearances and did not know, had no means of knowing it was unsound,

then his representation that it was sound would amount to nothing.] [6] . . . .

["So, gentlemen, the plaintiff is entitled to your verdict for the amount of his claim, unless one of these defences is made out. Now, was this a mere representation of the goods? Did the plaintiff say, it is sound timber so far as I know? If he said that and did not know or had not cause to know that he was telling a falsehood, that would amount to nothing. But if this timber was in such a rotten condition that he must have known and did know it was unsound, then that was a fraudulent misrepresentation, and if the defendant notified him promptly after discovering it, he could not recover; and promptly means reasonably quickly under all the circumstances of the case."] [7]

Plaintiff's points were as follows:

"1. The defendant cannot resist payment of the contract price of the timber, nor can he claim any reduction therefrom on account of the alleged unsoundness of the timber, without proof of a warranty or fraudulent representation as to its quality. A mistaken or false representation of its soundness is not sufficient of itself to amount to a defence." Affirmed. [1]

"2. A mere representation that the timber was sound did not constitute a warranty and is no defence to the payment of the whole of the purchase money, unless such representation was both fraudulent and false." Affirmed. [2]

"3. In the absence of a warranty, the representations of plaintiff, that the timber was sound, without fraud, is no defence whatever, and even if the jury should find that such representations were fraudulent, such unsoundness would, nevertheless, be no defence, if the defendant, after the discovery thereof, used and sold any portion of the timber; it was his duty, in that case, to notify the plaintiff promptly, that he declined to accept it, otherwise he is bound to pay for it." Affirmed. [3]

"4. If the defendant discovered the alleged unsoundness of the timber soon after its delivery in November, 1884, but did not notify the plaintiff of his objections to it till the 16th of the following February, (nearly three months afterwards,) and continued in the meantime to saw up and use portions of it, he is now estopped from claiming a rescission of the contract, or the right to return and throw the residue back on plaintiff's hands,

and in the absence of a warranty is liable for the full contract price of the timber." Affirmed. [4]

Verdicts and judgments for plaintiff. Defendant appealed.

*Errors assigned* were (1–7) instructions, quoting them.

*Levi Bird Duff*, for appellant, cited, Story on Sales, § 374; Mc-Farland v. Newman, 9 Watts, 55; Pennock v. Tilford, 17 Pa. 456; Fogel v. Brubaker, 122 Pa. 7; Weimer v. Clement, 37 Pa. 147; Selser v. Roberts & Co., 105 Pa. 242; Kellogg v. Bridge Co., 110 U. S. 116; Buffington v. Quantin, 17 Pa. 310.

*Thos. C. Lazear, Chas. P. Orr* with him, for appellee, cited Weimer v. Clement, 37 Pa. 147; Barnard v. Kellogg, 10 Wallace, 383; Benjamin on Sales, § 666; Warren v. Phila. Coal Co., 83 Pa. 437; McFarland v. Newman, 9 Watts, 55; Wetherell v. Nelson, 20 Pa. 448; Pennock v. Tilford, 17 Pa. 456; Bower v. Fenn, 90 Pa. 359; Hilliard on Sales, 476; Matteawan Co. v. Bently, 13 Barb. 64; Fry on Specific Performance, 409; Pearsoll v. Chapin, 44 Pa. 14.

OPINION BY Mr. JUSTICE McCOLLUM, January 3, 1893:

In November, 1884, J. R. Houston, the appellee, sold and delivered to J. W. Cook, the appellant, at the mill of the latter in the city of Allegheny, a raft of oak timber for thirteen cents per cubic foot. The timber was examined and measured in the presence of the parties by W. S. Oakley, the city measurer, and it amounted at the price named to the sum of $622.18. The appellant paid, on the 15th of November, 1884, one hundred and fifty dollars in cash, gave his duebill for $50, payable in December following, and his note for $347.18 at four months, to apply on this sum; and the balance, being $75, he retained as he alleges "to cover any deficiency that might thereafter appear in the timber." This suit was brought on the 25th of March, 1885, and in it the appellee claimed and recovered in the court below a verdict and judgment for the balance so retained and the amount of the note above mentioned. The defence to the action was that the appellee expressly warranted and falsely and fraudulently represented the timber as sound, when, in fact, it was rotten and nearly worthless as he well knew. This defence was supported by the testimony of the appellant, in which he was corroborated to some extent by Duff and Wallace, the former his bookkeeper, and

the latter the foreman of his mill. The appellee denied that he warranted the quality of the timber or made any false representations respecting it, and he alleged that the timber was sound when rafted and delivered. This denial and allegation he supported by his own testimony in which he was corroborated to some extent by the evidence of Oakley, the city measurer, and of Samuel Thomas and John Deidrich, who assisted in getting out the timber and rafting it. It is evident that the jury accepted the appellee's version of the transaction as the true one, and did not credit the testimony offered by the appellant to sustain his claim.

As the appellant gave no intimation that he was dissatisfied with the timber until nearly three months after he claims he discovered it was not in quality as it was represented and warranted to be, and in the meantime he sawed and disposed of a part of it, he did not fairly present, in his own testimony, a case for rescission. It was, rather, a case for recoupment of damages sustained by a breach of warranty or by false and fraudulent representations.

In reviewing the instructions to the jury we must not lose sight of the obvious fact that the appellant rested his defence in the court below upon two propositions which he endeavored to sustain by evidence, first, that there was an express warranty of the quality of the timber, and, second, that there was a fraudulent representation as to its quality, which his vendor knew to be false. This fact appears in the unchallenged statement of the learned judge in his general charge and in the appellant's testimony. It is also shown in the appellee's answer to the defence set up to defeat his claim. The charge, considered as a whole, was appropriate to the issues of fact made by the parties. It is true that the unqualified affirmance of the appellee's fourth point may admit of a construction which discloses technical error, and the same may be said of the answer to the third point. It is probable, however, that these points were drawn with reference to the question of rescission and were intended to state the principle that prompt notice of non-acceptance of the chattel, or thing bargained for, is essential to a defence on this ground. But whether so or not, we regard the answers to them as, at most, harmless error, in view of the clear and repeated instruction in the general charge that

the damages arising from fraud or a breach of warranty were a defence pro tanto. The principles applicable to a case of warranty and fraud in the sale of chattels were plainly and correctly stated by the learned judge, and these govern the issues made and tried by the parties in this case.

The specifications of error are overruled.

Judgment affirmed.